**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 1:25-cr-20416-JEM**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**CARLOS FELIPE PADILLA EZQUERRO,**

**Defendant.**

______________________________________/

# CARLOS FELIPE PADILLA EZQUERRO'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE

Carlos Felipe Padilla Ezquerro, through undersigned counsel, respectfully requests a sentence of 24 months' imprisonment under 18 U.S.C. § 3553(a). At age 42, Mr. Padilla comes before the Court with no prior convictions, a history of unpaid service as a Roman Catholic priest, a difficult transition from the priesthood to supporting himself, and a family prepared to support his return to a lawful life in Mexico. He accepts that his role in the money laundering scheme requires imprisonment. The question is how much imprisonment is necessary for this defendant.

Mr. Padilla's life before the offense and his conduct afterward provide substantial reasons for a sentence below the advisory range. He devoted more than five years to the priesthood without monetary compensation. After leaving the priesthood without practical, readily marketable skills outside that vocation, he initially trusted assurances from the brother of one of his friends from the priesthood that courier work was legitimate. He reports voluntarily ending his money courier work after eight weeks—nearly four years before his arrest. He subsequently married and became a father during his detention for the instant offense. He has a documented history of professional writing and ghostwriting (PSR ¶¶ 189, 193) and has informed counsel that he has written *Sanar con el Dolor*, a book about spirituality and healing that draws on the biblical story of Job to reflect

on suffering, personal responsibility, and rehabilitation. Income from book sales has continued during custody. PSR ¶ 206. These circumstances bear directly on his character, prospects for rehabilitation, and the need for further incapacitation. Final PSR ¶¶ 154, 166–177, 189–196; PSR Addendum at 9.

The defense incorporates its separately filed PSR objections and requests the necessary rulings without repeating those arguments here.

This memorandum presents independent reasons why 24 months is sufficient under § 3553(a).

***The Court Must Consider the Person as Well as the Offense***

Section 3553(a) directs the Court to impose a sentence sufficient, but not greater than necessary, to accomplish the statutory purposes of sentencing. The advisory range supplies the starting point; the Court must then assess the facts of the individual case. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). Section 3661 permits a broad inquiry into the defendant's background, character, and conduct. See *Pepper v. United States*, 562 U.S. 476, 488–93 (2011).

***Years of Priestly Service Belong in the Assessment of His Character***

Mr. Padilla entered the Catholic seminary in 2002, was ordained a Roman Catholic priest on December 13, 2014, and served until approximately early 2020. He received no monetary payment for that work. During his priesthood, he preached in Mexico, Italy, Spain, and the United States. PSR ¶¶ 177, 196. That sustained commitment is a substantial part of the adult life the Court is being asked to evaluate.

The defense asks the Court to consider the work he performed, without assigning sentencing weight to religious affiliation or belief. In *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007), the Eleventh Circuit distinguished impermissible reliance on religion from

permissible consideration of concrete changes in a defendant's life following a religious conversion. The same distinction permits the Court to consider Mr. Padilla's *actual* vocational history and service and his years of unpaid work supply relevant evidence of character under § 3553(a)(1).

Leaving that vocation was a difficult transition. Mr. Padilla reported situational depression and guilt after leaving the priesthood, for which he sought help from a psychiatrist and psychologist in Mexico. PSR ¶ 181.

***His Entry Into the Offense Followed a Difficult Transition and Misplaced Trust***

When Mr. Padilla left the priesthood, he lacked practical, marketable skills for supporting himself outside the vocation to which he had devoted his adult life. His studies and years of religious service had not prepared him to establish a livelihood in the commercial world. Indeed, Mr. Padilla left the priesthood without a viable, "second" career, or a dependable means of support.

While Mr. Padilla was struggling to support himself after leaving the priesthood, Luis Fernando Gaxiola, the brother of one of his friends from the priesthood, offered him a courier job and assured him that the work was legitimate. Mr. Padilla initially believed those assurances and accepted the job. His lack of marketable skills and trust arising from that connection to the priesthood left him particularly vulnerable to that deception.

This account explains his initial entry into the work. It does not retract his guilty plea or his acknowledgment that he later turned a blind eye to the truth. PSR ¶ 154. The Court can consider both the misplaced trust that brought him into the activity and the culpable choices for which he accepts responsibility. His account of voluntarily quitting after eight weeks, nearly four years before his arrest, is also relevant: the work did not become a lasting occupation. These

circumstances support an individualized assessment of his culpability and the punishment necessary under § 3553(a)(1) and (a)(2).

***His First Conviction and His Decision to Stop Support a Limited Need for Incapacitation***

The PSR identifies no juvenile adjudications, no adult criminal convictions, no other criminal conduct, and no pending charges. He has zero criminal history points. PSR ¶¶ 166–170. Although Category I and the zero-point adjustment account for part of that history, they do not exhaust its significance under § 3553(a)(1) and (a)(2)(B)–(C). The Court must still decide what his history, conduct since the offense, and present circumstances show about the likelihood of future crime.

Mr. Padilla's acceptance statement reports that he participated for eight weeks and voluntarily quit. PSR ¶ 154. The PSR identifies his personal deposits during January through March 2022; he was arrested on October 31, 2025. PSR ¶¶ 87–88, 191. His account of stopping, considered with the absence of identified additional criminal conduct during the intervening years, supports the conclusion that a lengthy term is unnecessary to interrupt an ongoing criminal livelihood.

*Gall* is particularly instructive on this point. The Supreme Court recognized the relevance of a defendant's voluntary decision to leave a conspiracy and his subsequent conduct when assessing deterrence and danger to the public. 552 U.S. at 56–57. Simply put, the relevant principle is that a decision to stop before arrest may meaningfully inform the Court's assessment of future conduct.

Mr. Padilla's acknowledgment of responsibility is direct. He told Probation that he turned a blind eye because of ambition and that he takes full responsibility for his actions. PSR ¶ 154. He asks the Court to consider that acknowledgment together with his decision to stop and the life he

can resume. His stable upbringing and continuing family relationships provide resources for lawful reintegration. PSR ¶¶ 173–176.

***His Writing and His Book Are Part of His Effort to Rebuild***

The PSR records a writing certificate, ghostwriting, and later efforts in marketing, real estate, and insurance. PSR ¶¶ 189–195. These entries describe his attempts to find a place outside the priesthood. They should not be equated with a secure career or an ability to market his education and experience when he first left religious life. His ability to write is a resource on which he can now build, rather than proof that the transition was easy or that he had a dependable livelihood available to him.

Mr. Padilla wrote *Sanar con el Dolor*, a book about spirituality and healing. Drawing on the biblical story of Job, he seeks to help readers reflect on suffering, recover from life's setbacks, accept responsibility for their mistakes, and rebuild their lives. He describes writing the book as an opportunity to help others while undertaking his own reflection and rehabilitation. That purpose connects his earlier vocation of service with a practical means of pursuing productive work and a lawful life.

His writing offers one possible avenue for rebuilding. The PSR reports that income from his books continued during custody. PSR ¶ 206. That does not guarantee future success, but it identifies a lawful source of support beyond a general promise to find employment. Mr. Padilla intends to continue operating his own small publishing company, SOMOSILCUOR, upon release. Considered alongside his family support and prior service, his vocational history supports a sentence that punishes the offense while preserving a realistic opportunity to return to productive responsibilities.

***His Family Offers Stability and Responsibilities Upon Return***

Mr. Padilla married Andrea Deita on March 11, 2023. His son, Alonso, is just 11 months old and was born after his detention began. His wife lives and works in Mexico, communicates with him daily, and corroborated his personal-history information during Probation's investigation. She has experienced depression and sought therapy during his incarceration. PSR ¶¶ 172, 176; Addendum at 9. A substantial portion of his son's earliest life has already passed while he has been in custody.

His parents remain supportive, and his sister, a university professor in Mexico, visited him at FDC Miami. PSR ¶¶ 173–175. These relationships provide a source of accountability and continuity when he returns. His wife's employment and the presence of extended family do not make him an irreplaceable caregiver, and the defense does not claim otherwise. Their significance is that he has people who remain engaged with him and family responsibilities to assume after imprisonment.

The effect of separation on his wife and young child also belongs in the proportionality assessment. Mr. Padilla reports that his wife's tourist visa was revoked, further limiting her ability to visit him in the United States. The defense recognizes that incarceration commonly burdens innocent family members. Here, the Court can weigh those actual circumstances together with his lack of prior convictions and his means of lawful support. A 24-month sentence permits substantial punishment while limiting additional disruption to a family that can help sustain his rehabilitation.

***Twenty-Four Months Provides Just Punishment and Adequate Deterrence***

Mr. Padilla pleaded guilty to conspiracy to commit concealment money laundering. His 70 cash deposits, totaling approximately $4.5 million across 14 states, were serious, repeated acts that helped move unlawful proceeds through accounts controlled by others. PSR ¶¶ 1, 87–88. The

defense accepts that the sentence must communicate the seriousness of his choices and deter others from performing the same function.

Twenty-four months of imprisonment accomplishes that purpose without treating the amount handled as the complete measure of the person. His assigned collection and deposit work remains relevant to proportional punishment, even apart from the formal role objection. The identified transactions do not make him the creator of the investment scheme or the controller of the receiving companies. PSR ¶¶ 87–88, 136–149. Mr. Padilla reports that he recruited no one and performed an easily replaceable collection and deposit function. The defense accepts responsibility for the admitted amount and asks the Court to weigh his actual function alongside his personal history. He further reports that, after splitting his commission with his recruiter, his own compensation amounted to less than one percent of the funds deposited. That limited personal benefit is relevant to evaluating his actual function and culpability; the amount he handled should not be mistaken for the amount he earned.

Mr. Padilla has been continuously detained since October 31, 2025. PSR ¶ 191. This first experience of prolonged incarceration has already made the consequences of his conduct concrete. A total term of 24 months would remain a substantial custodial punishment and a clear warning that paid participation in laundering brings imprisonment. The request concerns the sentence imposed and calculation of any prior-custody credit remains with the Bureau of Prisons under 18 U.S.C. § 3585(b).

The need to protect the public should be assessed against the whole record: a first conviction at 42, a reported voluntary stopping point years earlier, efforts to develop lawful work outside the priesthood, and a family awaiting his return. His mental-health history supports access to appropriate care as needed, and does not establish a need for additional years in prison. Together,

these circumstances support the conclusion that 24 months supplies sufficient punishment and deterrence without unnecessary incapacitation.

***The Advisory Range and Comparable Sentences Remain Part of the Assessment***

The final PSR calculates offense level 27, Category I, and 70–87 months, subject to the preserved objections. PSR ¶¶ 165, 168, 209. The defense recognizes the extent of the requested variance. Its justification rests on the combined circumstances described above, rather than a claim that any single favorable characteristic requires a particular reduction. The Court should resolve the objections, identify the resulting range, and then determine the appropriate sentence under § 3553(a).

The approaching inflation amendment provides an additional policy consideration. The addendum recognizes the defense's request to consider the two-level effect of the revised monetary thresholds scheduled for November 1, 2026. Addendum at 8; U.S. Sentencing Commission, Amendments to the Sentencing Guidelines, amend. 2 (Apr. 30, 2026). If sentencing occurs before that effective date, the defense requests consideration of that policy through the variance analysis. If sentencing occurs afterward, the Court should use the applicable manual as a whole, subject to § 1B1.11. This timing consideration supplements the personal grounds for relief.

The addendum reports sentences of 40 months for Favela Valenzuela and 50 months for Paola Vargas Gonzalez. Addendum at 11. Those sentences deserve consideration, including Favela's fewer deposits (41) and smaller amount ($2.5 million). The defense does not claim that the available record establishes identical histories, assistance, or guideline findings. Section 3553(a)(6) calls for comparison of defendants with similar records and conduct, with attention to the individual differences explained here—Mr. Padilla's years of unpaid priestly service, his voluntary cessation years before arrest with no intervening criminal conduct, his first-offender

status at age 42, and his family responsibilities. The requested sentence rests on those differences and the statutory purposes, rather than a proposed entitlement to a discount from another defendant's sentence.

***Cooperation and the Remaining Terms of Sentence***

Early in the case, Mr. Padilla met with federal agents and cooperated with their investigation. He made himself available to provide information and answer their questions. The defense asks that these early efforts be reflected in the sentencing record and preserves its request for a substantial-assistance reduction should the government file a motion under U.S.S.G. § 5K1.1. Consistent with paragraph 12 of the plea agreement, the defense does not rely on presentence cooperation as an independent ground for a variance absent that motion. The requested 24-month sentence rests on the other grounds presented in this memorandum.

Mr. Padilla is a Mexican citizen subject to an ICE detainer, with his family and vocational ties in Mexico. PSR ¶¶ 173–178. Those facts identify the setting for his expected reintegration. The defense requests no supervised release if the Court finds it unnecessary after the individualized assessment under 18 U.S.C. § 3583(c) and U.S.S.G. § 5D1.1. It also requests no fine in light of Probation's inability-to-pay assessment and acknowledges the mandatory $100 special assessment. PSR ¶¶ 11, 207, 215. All legally required restitution and forfeiture obligations remain subject to determination.

***Conclusion***

Mr. Padilla respectfully requests 24 months' imprisonment. His years of unpaid priestly service, absence of prior convictions, difficult transition out of the priesthood, initial reliance on Gaxiola's misrepresentations, decision to end his courier activity, book about spirituality and healing, and continuing family support provide concrete reasons to conclude that he can return to

a useful and lawful life. He also reports that he works as a unit orderly and has maintained excellent conduct in custody, consistent with the counselor's letter provided to counsel. His work and institutional conduct offer further evidence of his commitment to productive responsibilities and rehabilitation. Those circumstances do not diminish the seriousness of his crime. They explain why its punishment need not consume the additional years contemplated by the PSR's advisory range. A 24-month term gives effect to the offense's seriousness, deterrence, and protection of the public while remaining sufficient, but not greater than necessary, for this defendant.

Respectfully submitted,

**s/ Ricardo P. Hermida**
Ricardo P. Hermida
Florida Bar No. 716790
55 Merrick Way, Suite 212
Coral Gables, Florida 33134
Telephone: (305) 461-1116
Email: rick@rphermida.com
Counsel for Carlos Felipe Padilla Ezquerro

## Certificate of Service

I HEREBY CERTIFY that on Thursday, October 22, 2026, a true and correct copy of the foregoing was served through CM/ECF on counsel of record and separately provided to U.S. Probation Officer Kira Harmeling at kira_harmeling@flsp.uscourts.gov.

**s/ Ricardo P. Hermida**
Ricardo P. Hermida
Counsel for Mr. Padilla
Florida Bar No. 716790